IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

|  |  |
|---|---|
| **CONRAD BASSETT**<br><br>Plaintiff,<br><br>v.<br><br>**JULIE SU, ACTING SECRETARY**<br>**UNITED STATES DEPARTMENT OF LABOR**<br><br>Defendant. | CIVIL ACTION NO.: 1:22-cv-02408 |

**SECOND AMENDED COMPLAINT**

Plaintiff, Conrad Bassett (herein "Mr. Bassett" or "Plaintiff Bassett"), by and through undersigned counsel, pursuant to Rule 15 of the Federal Rules of Civil Procedure, hereby files this Amended Complaint for damages against Julie Su, Acting Secretary of the U.S. Department Labor (hereinafter "Agency" or "Defendant"), and states as follows:

### I.  JURISDICTION AND VENUE

1. Plaintiff brings this action for discrimination and retaliation under the Rehabilitation Act of 1973 as amended, 29 U.S.C. § 701 et seq. ("Rehab Act"). Plaintiff seeks declaratory, individual and systematic injunctive relief; actual and compensatory damages; attorney's fees; and costs of litigation for said discrimination and retaliation.

2. This Court has jurisdiction over this matter as it arises from the federal question presented by Title VII and the Rehab Act. *See generally* 28 U.S.C. § 1331.

3. Venue is appropriate as the acts and/or omissions of Defendant from which the causes of action arise, occurred within the United States District Court of the District of Columbia. *See* 28 U.S.C. § 1391(b)(2).

4. Due to its contacts within the District of Columbia, Defendant avails itself to the jurisdiction of this Court.

5. Plaintiff timely filed a charge of discrimination and retaliation with the Equal Employment Opportunity Commission ("EEOC"). Plaintiff received a Final Agency Decision and Notice of Rights from the United States Department of Labor on May 16, 2022.  Plaintiff files suit within ninety (90) days of receipt.

## II. PARTIES

6. Mr. Bassett is an employee of the Wage and Hour Division of the Department of Labor ("WHD") with a documented disability, a citizen of the United States and is a resident of Fairfax, Virginia.

7. Defendant, Julie Su, , is the Acting Secretary of the U.S. DOL. She may be served process through the Attorney General of the United States, the United States Attorney's Office for the District of Columbia, and the U.S. Department of Labor.

## III. FACTUAL ALLEGATIONS

8. Mr. Bassett began working for the U.S. Department of Labor in or around May 9, 1994, under a Schedule A appointment.

9. At the time of the Complaint, Mr. Bassett was (and currently is) a Government Information Specialist, GS-11 in the Wage and Hour Division, 200 Constitution Avenue, NW, Rm. S-3510, Washington, D.C. 20210.

10. At all times relevant to the Complaint, Genise Coleman (Ms. Coleman"), Branch Chief, was Mr. Bassett's first-line supervisor.

11. At all times relevant to the Complaint Patrice Rachel Torres (herein "Ms. Torres"), Associate Administrator for Administrative Operations, was Mr. Bassett's second-line supervisor.

12. Throughout Mr. Bassett's employment, his work performance met the Agency's legitimate business expectations.

13. Mr. Bassett was born with Congenital Cataracts with Nystagmus for which he has had numerous surgeries.  Mr. Bassett also suffers from glaucoma for which he was diagnosed in 2015.

14. Mr. Bassett's conditions are permanent and are continued to be treated with medication and surgery, if needed.

15. However, Mr. Bassett could perform the essential functions of his job with or without an accommodation for these disabilities/serious health conditions.

16. Mr. Bassett's condition affected his daily life activities like seeing, working, reading and driving.

17. Mr. Bassett relayed his impairments and the need for an accommodation to the Agency numerous times; most recently (and relating to the facts in this Complaint) in 2018, when Ms. Coleman came on board, Mr. Bassett informed her that he had not been accommodated and that that particular issue was currently in EEO process.

18. Mr. Bassett had previously settled a grievance he had filed against the WHD on April 7, 2015.  Mr. Bassett gave Ms. Coleman a copy of the Settlement Agreement.[1]

---

[1] The Settlement Agreement included a provision which addressed Mr. Bassett's disability and the needs for an accommodation.

19. On or about February 8, 2018, Mr. Bassett was engaged in active mediation for which he had previously filed an EEO complaint (DOL-18-11-041)(adjudicated on September 21, 2021) based on his disability in which Ms. Torres, Patricia Davidson, Deputy Administrator, and Ms. Coleman were named as material witnesses.

20. Thus, Ms. Coleman, Ms. Davidson, and Ms. Torres had knowledge of Mr. Bassett's medical conditions.

21. During the time relevant to this Complaint, Mr. Bassett assisted his co-workers with their EEO complaints. Specifically, Mr. Bassett assisted Melanie Jackson and Marvin Leeper.

22. Mr. Bassett had a reputation amongst his colleagues as a person who would provide guidance and assistance with EEO matters.

23. From about June 2019 through November 2019, Mr. Bassett was scheduled as a material witness for Melanie Jackson in her EEO matter against Karen Gaskin, Acting Branch Chief of Business Operations, Ms. Davidson and Ms. Torres.

24. On or about August 28, 2019, Mr. Bassett submitted a leave request to be off from October 1, 2019, through November 1, 2019.

25. Mr. Bassett had roughly 208 hours of use or lose leave that had to be used by the end of 2019.

26. On or about August 29, 2019, Ms. Coleman denied Mr. Bassett's request.

27. In or around September 19, 2019, Mr. Bassett and Ms. Coleman discussed his leave request.

28. During the discussion, Ms. Coleman indicated that she could only approve his leave if he changed it to a leave request pursuant to the Family Medical Leave Act (FMLA).

29. On or about October 2, 2019, Ms. Coleman denied Mr. Bassett's leave request as it was not a request pursuant to FMLA.[2]

30. Due to Ms. Coleman's denial of Mr. Bassett's request, he could not attend an appointment with Dr. Suleiman Alibhai, Optometry specialist, to address vision rehabilitation and alternative low vision accommodations/solutions.

31. As a result, Mr. Bassett was unable to explore alternative solutions to aid with his accommodation.  Moreover, it prevented Mr. Bassett from obtaining a particular pair of eyeglasses which would have aided him in driving.  Thus, his ability to drive anywhere, including work, was completely affected.

32. Given Mr. Bassett's inability to see Dr. Alibhai, he was unable to get the assistance he needed to address his vision impairment and rehabilitation.  This negatively affected how Mr. Bassett completed work-assigned tasks and often caused him to fall behind.  This point was addressed as a deficiency in Mr. Bassett's 2019/2020 performance.

33. On October 11, 2019, Ms. Coleman met with Mr. Bassett and gave him his yearly 2018/2019 Performance Evaluation in a format he could not read due to his disability. Specifically, during the meeting, Ms. Coleman repeatedly pointed to her screen signaling Mr. Bassett to look at her screen even though she knew he could not see it.

34. That same day, Mr. Bassett requested to review the materials relied upon by Ms. Coleman to form the rating, in a format he could read.

35. On or about October 14, 2019, Columbus Day, Ms. Coleman finally provided Mr. Bassett with some of the documents he requested in a manner he could read.

---

[2] Around the same time, Ms. Coleman granted Mr. Bassett's colleague's leave request during the same timeframe as his despite her assertion that no one could take leave during the first two weeks of October.

5

36. That same day Mr. Bassett's attorney at the time, Maureen Willoughby, requested additional time for review as he had already lost three days, out of the give allotted, from the date of issuance.

37. On or about October 15, 2019, Ms. Torres, Mr. Bassett's second-line supervisor and reviewing official, responded to Ms. Willoughby and informed her that the clock on the review period had started on October 11, 2019, when Ms. Coleman had issued the Performance Evaluation. Ms. Willoughby reminded Ms. Torres of Mr. Bassett's disability and informed her that the clock could not start until he has been given all the information relied upon by Ms. Coleman to complete his Performance Evaluation. Ms. Torres uncooperatively begged to differ but informed Ms. Willoughby she must make a request for an extension.

38. On or about October 16, 2019, Ms. Coleman finally provided the entire record on which she had relied upon to complete Mr. Bassett's Performance Evaluation. By the time Ms. Coleman had given Mr. Bassett all the pertinent documents, five days had elapsed.

39. Accordingly, or about that same day, Ms. Willoughby requested extra time to review and provide a response as both she and Mr. Bassett had concerns regarding the information that was supplied because it was rife with inaccuracies. Ms. Torres provided a new deadline of October 22, 2019.

40. In order for Mr. Bassett to complete a thorough review and provide a response by the deadline, Mr. Bassett spent countless hours working non-stop in front of his computer, reviewing the information Ms. Coleman had given him. The time constraint made it impossible for Mr. Bassett to take frequent breaks which caused filaments to build up in his eyes. Indeed the protracted reading caused Mr. Bassett to develop excessive amounts of filaments which caused severe eye strain and aggravation.

41. <u>Ms. Bassett had informed Ms. Coleman in September, October and November of 2018, and again in Febriary 2019, that if he didn't take frequent breaks and time away from reading a computer screen, filaments would build up and cause severe eyestrain and discomfort.</u>

42. <u>Mr. Bassett did not feel comfortable asking for an additional extension as Ms. Torres' reluctance to grant him the initial extension had a chilling effect on him.  Thus, the response he provided on October 22, 2019, was not completed as thoroughly as was necessary.</u>

43. Despite Mr. Bassett's rebuttal to his Performance Evaluation, which he had submitted to Ms. Torres on October 22, 2019, Ms. Coleman did not revise the rating she had given him.

44. A rating of Minimally Satisfactory affected Mr. Bassett in the following ways:

   a. Mr. Bassett applied for vacancies at Mine, Safety and Health Administration and International Labor Affairs but was not selected even though he was qualified and had been selected for an interview.  These positions would have been at the GS-12 level and would have meant career upward mobility and grade/step increases;

   b. Mr. Bassett did not receive any yearly bonus money nor any annual leave award; and

   c. It made Mr. Bassett susceptible to discipline and/or removal.

45. On or about October 18, 2019, Kim Borrowitz, Reasonable Accommodation Specialist, Civil Rights Centerm acting at the behest if agency management, supplied Mr. Bassett with a a computer program, ZoomText, which could not be supported by the computer he was using at the time.  Immediately, Mr. Bassett made Ms. Coleman, Ms. Torres and Ms. Borowitz aware that ZoomText did not work on his computer and that he needed an alternative solution as this was not a working accommodation.  Despite being aware that ZoomText did not work, no alternative solution was provided.

46. Obviously, due to computer malfunction, Mr. Bassett was unable to complete work that had been tasked to him.

47. Thus, the Agency's failed to provide Mr. Bassett with an accommodation for his disability. [3]

48. Despite Mr. Bassett's need for an accommodation to complete his work and management's failure to provide it, management continued to assign him with work deadlines which were completely unattainable.

49. Indeed, Ms. Coleman purposefully assigned Mr. Bassett with more complex FOIA cases than she did his colleagues. This was done to target Mr. Bassett and went against the initiative given by Eugene Scalia, Secretary of Labor, for the office to complete the oldest FOIA requests before any others were completed. Despite the initiative, Ms. Coleman would pick and choose Mr. Bassett's assignments, often highlighting specific requests, which was something she did not inflict on Mr. Bassett's colleagues.

50. In addition, Ms. Coleman instructed Donna Davis, Government Information Specialist not to assist Mr. Bassett with accessing the Wage Hour Investigative Support and Reporting Database (herein "WHISARD") when Mr. Bassett and his colleagues were having difficulty accessing the system. Mr. Bassett was the only employee who Ms. Coleman prevented Ms. Davis from assisting. This also caused delays in meeting deadlines.

51. Between October 2019 and April 2020, Mr. Bassett sent numerous emails to Ms. Coleman, Ms. Torres and others regarding his various computer and/or technology issues.

52. Mr. Bassett repeatedly informed Ms. Coleman and Ms. Torres that he had ZoomText issues with his laptop, issues with Adobe, and difficulty accessing WHISARD. He indicated that

---

[3] Mr. Bassett has a documented disability, (visual limitations; glaucoma) of which the Agency was aware of and which they were supposed to accommodate. Mr. Bassett had requested and was granted a reasonable accommodation in January 2014.

he must have a viable and functional accommodation because he could not compete his work without it.

53. All of Mr. Bassett's had working computers.

54. Regardless, Ms. Coleman kept assigning Mr. Bassett tasks with deadline knowing that he had computer issues and could not complete the tasks in the timeframe she had assigned.

55. To this day, Mr. Bassett's accommodation request has not been met.

## COUNT I: VIOLATION OF 29 U.S.C. § 701 ET SEQ.
## VIOLATON OF THE REHABILITATION ACT

56. Plaintiff Bassett incorporates by reference paragraphs 1-55 of his Complaint as if fully set forth herein.

57. At all times relevant to this Complaint, Plaintiff Bassett was a qualified individual with a disability, pursuant to the Rehab Act.

58. Specifically, and at all times relevant, Plaintiff Bassett suffered from several disabilities/serious health conditions, including Congenital Cataracts with Nystagmus and Glaucoma – all recognized disabilities under the Rehab Act that impaired several of Plaintiff Bassett's daily life activities and/or functions.

59. The Agency discriminated and retaliated against Plaintiff Bassett by:

- Denying Plaintiff Bassett's leave request in August 2019, but approving leave for others;

- Insisting Plaintiff Bassett take leave pursuant to FMLA;

- Continuing to assign Plaintiff Bassett work and appointing unattainable deadlines given his need for an accommodation to complete his work;

- Rating Plaintiff Bassett minimally satisfactory on his 2018/2019 Performance Appraisal;

- Providing Plaintiff Bassett with a paper copy of his 2018/2019 Performance Appraisal knowing fully well that he cannot read it without some type of visual assistance;

- Refusing to allow Plaintiff Bassett sufficient time to review and provide comments to his 2018/2019 Performance Appraisal; and

- Refusing to allow Plaintiff Bassett to take more than two weeks of leave at a time while allowing others to do so (Donna Davis, June Wheeler and Ms. Coleman (via Ms. Torres).

60. The Agency would not have taken discriminatory actions against Mr. Bassett, but for his disabilities/serious health conditions and/or requests for reasonable accommodations.

61. Any reasons given by the Agency for its treatment of Mr. Bassett were pretextual, as his work performance met the Agency's legitimate business expectations.

62. Defendant, through its agents or supervisors, unlawfully discriminated and denied Plaintiff Bassett's equal employment opportunities because of his disabilities.

63. As a direct and proximate result of the illegal employment discrimination by Defendant, Plaintiff has suffered, and continues to suffer, severe pain and suffering and extreme mental anguish and emotional distress. Plaintiff has suffered and will continue to suffer a loss of earnings and other employment benefits and job opportunities.

64. Plaintiff believes that Defendant's conduct described *supra* was done with malice and with conscious disregard for his federally protected rights.  Defendant, through its officers, managing agents and/or other supervisors authorized and/or ratified the unlawful conduct.

65. The Agency's actions against Plaintiff Bassett occurred under circumstances that raise a reasonable inference of unlawful discrimination based upon his disabilities/serious health conditions and/or requests for accommodations.

66. As a direct and proximate result of the Agency's actions, Plaintiff Bassett has suffered and will continue to suffer pecuniary loss, emotional pain, suffering, inconvenience, mental anguish, loss of enjoyment of life, and other non-pecuniary losses.

67. The above-described acts by the Agency and employees of the Agency constitute disability discrimination and retaliation in violation of 29 U.S.C. § 701 ET SEQ.

## COUNT II
## RETALIATION IN VIOLATION OF 29 U.S.C. § 701 ET SEQ.
## VIOLATON OF THE REHABILITATION ACT

68. Plaintiff Bassett incorporates by reference paragraphs 1-67 of his Complaint as if fully set forth herein.

69. Plaintiff Bassett engaged in protected activity that took many forms, including when he requested an accommodation for his disability, when he assisted his colleague with her EEO complaint, when he complained to management that they were not accommodating him pursuant to his previous settlement agreement and participation in his own previous EEO complaint.  The Agency retaliated against Plaintiff Bassett by:

- Denying Plaintiff Bassett's leave request in August 2019, but approving leave for others;

- Insisting Plaintiff Bassett take leave pursuant to FMLA;

- Continuing to assign Plaintiff Bassett work and appointing unattainable deadlines given his need for an accommodation to complete his work;

- Rating Plaintiff Bassett minimally satisfactory on his 2018/2019 Performance Appraisal;

- Providing Plaintiff Bassett with a paper copy of his 2018/2019 Performance Appraisal knowing fully well that he cannot read it without some type of visual assistance;

- Refusing to allow Plaintiff Bassett sufficient time to review and provide comments to his 2018/2019 Performance Appraisal;

- Refusing to allow Plaintiff Bassett to take more than two weeks of leave at a time while allowing others to do so (Donna Davis, June Wheeler and Ms. Coleman (via Ms. Torres) and;

- Refusing to provide a reasonable accommodation for his disability.

70. Defendant's actions against Plaintiff Bassett constitute unlawful retaliation in violation of the Rehabilitation Act.

71. As a direct and proximate result of the Agency's actions, Plaintiff Bassett has suffered and will continue to suffer pecuniary loss, emotional pain, suffering, inconvenience, mental anguish, loss of enjoyment of life, and other non-pecuniary losses.

## RELIEF SOUGHT

WHEREFORE, Plaintiff Bassett respectfully requests this Court to:

A. Enter judgment for Plaintiff against Defendant on all Count(s).

B. Declare that the conduct of Defendant is in violation of the Rehabilitation Act;

C. Award Plaintiff equitable relief, such as the loss of any (i.e., back pay or merit increases), and other economic losses and entitlements retroactive to the date of the unlawful action found to have occurred in this case;

D.  Award Plaintiff compensatory damages for the injuries and losses that he suffered in an amount to be proved at trial;

E.  Order Defendant to pay all reasonable attorneys' fees, court costs, and expenses incurred by Plaintiff as a result of Defendant's actions and inactions, as well as pre-judgment and post-judgment interest; and

F.  Order such other equitable and legal relief as the Court deems necessary and appropriate.

## JURY DEMAND

Plaintiff requests a trial by a jury of their peers as to all claims set forth in this Amended Complaint.

Respectfully submitted:

| | |
|---|---|
| May 1, 2023 | /s/ Kenneth C. Wu |
| | Kenneth C. Wu |
| | D.C. Bar No. 490601 |
| | 1818 Library Street, Suite 500 |
| | Reston, Virginia 20190 |
| | Direct Telephone: 571-521-9134 |
| | Telephone: 703-835-6145 |
| | Facsimile: 703-831-0181 |
| | Email: kwu@lopezandwu.com |

## CERTIFICATE OF SERVICE

I hereby certify that a true and correct copy of the foregoing document entitled AMENDED COMPLAINT was served electronically via the Court's ECF system to:

ERIKA OBLEA, DC BAR #1034393
Assistant United States Attorney
601 D Street, NW
Washington, DC 20530
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
erika.oblea@usdoj.gov

This 1st day of May 2023.

                                            /s/ Kenneth C. Wu
                                            Kenneth C. Wu