IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| CONRAD BASSETT,<br><br>           Plaintiff,<br><br>v.<br><br>JULIE SU, ACTING SECRETARY<br>U.S. DEPARTMENT OF LABOR,<br><br>           Defendant. | )<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)   Civil Action No. 1:22-cv-2408-JEB |

**PLAINTIFF'S OPPOSITION TO DEFENDANT'S PARTIAL MOTION TO DISMISS**

Plaintiff Conrad Bassett (herein "Mr. Bassett", "Plaintiff Bassett", or "Plaintiff") hereby opposes Defendant Julie Su's ("Defendant" or "Agency") Partial Motion to Dismiss.

Defendant's Motion should be denied for the simple fact that Plaintiff has sufficiently pled facts which state a claim for relief that he was subjected to discrimination and retaliation in violation of the Rehabilitation Act of 1973 ("Rehab Act"). Therefore, Defendant's Motion should be denied.

## **INTRODUCTION**

On May 1, 2023, Plaintiff filed his Amended Complaint (ECF Docket No. 16) in the United States District Court for the District of Columbia. Plaintiff's Complaint alleged violation of the Rehabilitation Act, 29 U.S.C. § 701, *et seq.*  On May 15, 2023, Defendants filed a Motion to Dismiss as to all of Plaintiff's claims.  As explained in detail below, Plaintiff has presented and/or pled sufficient facts to demonstrate the plausibility of discrimination and retaliation causes of action.

**PERTINENT FACTS**

Mr. Bassett began working for the U.S. Department of Labor in or around May 9, 1994, under a Schedule A appointment. Second Amend. Compl. ¶ 8. At the time of the complaint, Mr. Bassett was (and currently is) a Government Information Specialist, GS-11 in the Wage and Hour Division. Second Amend. Compl. ¶ 10. At all times relevant to the complaint, Genise Coleman (herein "Ms. Coleman"), Branch Chief, was Mr. Bassett's first-line supervisor and Patrice Rachel Torres (herein "Ms. Torres"), Associate Administrator for Administrative Operations, was Mr. Bassett's second-line supervisor. Second Amend. Compl. ¶¶ 10-11. Mr. Bassett was born with Congenital Cataracts with Nystagmus and also suffers from glaucoma for which he was diagnosed in 2015. Second Amend. Compl. ¶ 13. Mr. Bassett's conditions are permanent and are continued to be treated with medication and surgery, if needed, however, Mr. Bassett could perform the essential functions of his job with an accommodation. Second Amend. Compl. ¶¶ 14-15.

Mr. Bassett relayed his impairments and the need for an accommodation to the Agency numerous times; most recently (and relating to the facts in this Complaint) in 2018, when Ms.Coleman came on board, Mr. Bassett informed her that he had not been accommodated and that that particular issue was currently in EEO process. Second Amend. Compl. ¶ 17. On or about February 8, 2018, Mr. Bassett engaged in active mediation for which he had previously filed an EEO complaint (DOL-18-11-041)(adjudicated on September 21, 2021) based on his disability in which Ms. Torres, Patricia Davidson, Deputy Administrator, and Ms. Coleman were named as material witnesses. Second Amend. Compl. ¶ 19. During the time relevant to this Complaint, Mr. Bassett assisted his co-workers, Melanie Jackson and Marvin Leeper. Second Amend. Compl. ¶ 21.

On or about August 28, 2019, Mr. Bassett submitted a leave request to be off from October 1, 2019, through November 1, 2019, which Ms. Coleman denied the following day. Second Amend. Compl. ¶ 24-26.  Due to Ms. Coleman's denial of Mr. Bassett's request, he could not attend an appointment with Dr. Suleiman Alibhai, Optometry specialist, to address vision rehabilitation and alternative low vision accommodations/solutions and as a result, Mr. Bassett was unable to explore alternative solutions to aid with his accommodation.  Second Amend. Compl. ¶¶ 30-31.  Due to Mr. Bassett's inability to see Dr. Alibhai, he was unable to get the assistance he needed to address his vision impairment and rehabilitation which negatively affected how he completed work-assigned tasks and often caused him to fall behind. This point was addressed as a deficiency in Mr. Bassett's 2019/2020 performance.  Second Amend. Compl. ¶ 32.

On October 11, 2019, Ms. Coleman gave Mr. Bassett his yearly 2018/2019 Performance Evaluation in a format he could not read due to his disability.  Second Amend. Compl. ¶ 33. That same day, Mr. Bassett requested to review the materials relied upon by Ms. Coleman to form the rating, in a format he could read.  Second Amend. Compl. ¶ 34.  Ms. Coleman finally provided Mr. Bassett with some of the documents he requested in a manner he could read.  Second Amend. Compl. ¶ 35.  That same day Mr. Bassett requested additional time for review as he had already lost three days, out of the time allotted for a response.  Second Amend. Compl.  ¶ 36.  On or about October 15, 2019, Ms. Torres, Mr. Bassett's second-line supervisor and reviewing official, responded to Ms. Willoughby and informed her that the clock on the review period had started on October 11, 2019, when Ms. Coleman had issued the Performance Evaluation. Ms. Willoughby reminded Ms. Torres of Mr. Bassett's disability and informed her that the clock could not start until he has been given all the information relied upon

3

by Ms. Coleman to complete his Performance Evaluation. Ms. Torres uncooperatively begged to differ but informed Ms. Willoughby she must make a request for an extension. Second Amend. Compl. ¶ 37. On or about October 16, 2019, Ms. Coleman finally provided the entire record on which she had relied upon to complete Mr. Bassett's Performance Evaluation. By the time Ms. Coleman had given Mr. Bassett all the pertinent documents, five days had elapsed. Second Amend. Compl. ¶ 38. In order for Mr. Bassett to complete a thorough review and provide a response by the deadline, Mr. Bassett spent countless hours working non-stop in front of his computer, reviewing the information Ms. Coleman had given him. Second Amend. Compl. ¶ 40. The time constraint made it impossible for Mr. Bassett to take frequent breaks which caused filaments to build up in his eyes. Id. Indeed, the protracted reading caused Mr. Bassett to develop excessive amounts of filaments which caused severe eye strain and aggravation. Id. Mr. Bassett did not feel comfortable asking for an additional extension as Ms. Torres' reluctance to grant him the initial extension had a chilling effect on him. Thus, the response he provided on October 22, 2019, was not completed as thoroughly as was necessary. Second Amend. Compl. ¶ 42. A rating of Minimally Satisfactory affected Mr. Bassett in many ways including difficulty in securing another position even when he was qualified, no grade/step increases or leave awards, and made him susceptible to discipline and/or removal. Second Amend. Compl. ¶ 44.

On or about October 18, 2019, Kim Borrowitz, Reasonable Accommodation Specialist, Civil Rights Center, supplied Mr. Bassett with a computer program, ZoomText, which could not be supported by the computer he was using at the time. Second Amend. Compl. 45. Mr. Bassett immediately made Ms. Coleman, Ms. Torres and Ms. Borowitz aware that ZoomText did not work on his computer and that he needed an alternative solution as this was not a working accommodation. Despite being aware that ZoomText did not work, management did not provide

an alternative solution. Id. Accordingly, Mr. Bassett was unable to complete work that Ms. Coleman has assigned him. Second Amend. Compl. ¶ 46. Despite Mr. Bassett's need for an accommodation to complete his work and management's failure to provide it, management continued to assign him with work deadlines which were completely unattainable. Second Amend. Compl. ¶ 48. Ms. Coleman purposefully assigned Mr. Bassett with more complex FOIA cases than she did his colleagues, and she would pick and choose Mr. Bassett's assignments, often highlighting specific requests, which was something she did not do to Mr. Bassett's colleagues. Second Amend. Compl. ¶ 49.

Between October 2019 and April 2020, Mr. Bassett sent numerous emails to Ms. Coleman, Ms. Torres and others regarding his various computer and/or technology issues. Second Amend. Compl. ¶ 51. Mr. Bassett repeatedly informed Ms. Coleman and Ms. Torres that he had ZoomText issues with his laptop, issues with Adobe, and difficulty accessing WHISARD. He indicated that he must have a viable and functional accommodation because he could not compete his work without it. Second Amend. Compl. ¶ 52.

## STANDARD OF REVIEW

The Federal Rules of Civil Procedure require that a complaint contain "a short and plain statement of the claim" in order to give the defendant fair notice of the claim and the grounds upon which it rests. Fed. R. Civ. P. 8(a)(2); *see also Erickson v. Pardus*, 551 U.S. 89, 93, 127 S. Ct. 2197, 167 L. Ed. 2d 1081 (2007) (per curiam). A motion to dismiss under Rule 12(b)(6) does not test a plaintiff's ultimate likelihood of success on the merits; rather, it tests whether a plaintiff has properly stated a claim. *See Scheuer v. Rhodes*, 416 U.S. 232, 236, 94 S. Ct. 1683, 40 L. Ed. 2d 90 (1974). The complaint's factual allegations are to be taken as true, and the court is to construe them liberally in the plaintiff's favor. *See, e.g., United States v. Philip Morris*, 116

F. Supp. 2d 131, 135 (D.D.C. 2000). The Complaint must contain sufficient factual matter, accepted as true, to "state a claim for relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). A claim is plausible when the plaintiff pleads facts that allow the court to draw the "reasonable inference that the Defendants is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citing *Twombly*, 550 U.S. at 556). Contrary to the Defendant's contention, Plaintiff has stated plausible, legitimate claims in the Complaint. Thus, it would be inappropriate for the Court to grant the Defendants' Motion to Dismiss.

## **ARGUMENT**

### **I. Simply Put, Plaintiff Bassett Exhausted His Administrative Remedies.**

The Rehabilitation Act requires federal employees to exhaust administrative remedies by submitting a claim to the employing agency before bringing suit. *Croce v. Garland*, Civil Action No. 21-00264 (RC), 2021 U.S. Dist. LEXIS 216141, at *1 (D.D.C. Nov. 9, 2021).

In its motion, Defendant argued that Mr. Bassett's discrimination and retaliation, or failure-to-accommodate claims related to the assignment of complex work should be dismissed because Plaintiff failed to administratively exhaust any claims on these matters. Def. Mot. to Dismiss Pg. No. 7. Defendant argued that Mr. Bassett did not mention the assignment of such complex work or his Fiscal 2020 performance appraisal. Defendant's argument fails however, given that one of the accepted claims for investigation in Mr. Bassett's EEO complaint was:

> "From October 25, 2019 and continuing to the present[1], management has assigned you work with deadlines that you could not meet, despite knowing that you had a broken computer that rendered you unable to utilize your reasonable

---

[1] Defendant's Motion for Partial Dismissal, Exhibit 5, Correspondence from Samuel L. Rhames, Acceptance of Claims, is dated November 5, 2020. ECF Docket No. 17.

accommodation of ZoomText (although management offered to allow you to telework to complete assignments, you allege that this is an ineffective accommodation, because updates to Citrix render you unable to utilize "legacy programs" such as WHISARD on your home computer that are necessary to do your work)".  Defendant's Motion for Partial Dismissal (herein "Def. Mot. Dismiss"), Exhibit 5.

In the Second Amended Complaint, Mr. Bassett stated that "Despite Mr. Bassett's need for an accommodation to complete his work and management's failure to provide it, management continued to assign him with work deadlines which were completely unattainable.  Second Amend. Compl. ¶ 48.  In the next paragraph, Mr. Bassett *elaborated* as to why the deadlines were completely unattainable, i.e., Ms. Coleman assigned Mr. Bassett with more complex FOIA cases than she did his colleagues and that she would pick and choose his assignments, often highlighting specific requests.  Second Amend Compl. ¶ 49.  Mr. Bassett's allegations in paragraphs 48 and 49 are not separate, they arise from the same actions.  Thus, Mr. Bassett put the Agency on notice that he believed that Ms. Coleman's habit of assigning him work with unattainable deadlines, because of the complex nature of the work, was discriminatory/retaliatory.  Moreover, Defendant cites no case which supports the idea that an employee's failure to narrow or clarify a request amount to a failure to exhaust.  Instead, the Defendant relies on cases where the requesters did not file an administrative appeal.  As established, Mr. Bassett filed an administrative appeal and Defendant has acknowledged that fact.  Def. Mot. Dismiss Pg. Nos. 9-10.  As such, Mr. Bassett has exhausted his administrative remedies and is able to litigate his claims.

Even if this court finds that Mr. Bassett's unattainable deadlines allegation and complex work assignments allegation are each discrete claims of discrimination or failure to accommodate, which Mr. Bassett maintains that they are not, the Agency could reasonably have been expected, upon investigation of the aforementioned allegations, to uncover evidence which supported Mr. Bassett's claim of complex work assignments would be uncovered.  See *Haynes v. D.C. Water & Sewer Auth.*, 441 U.S. App. D.C. 1, 11, 924 F.3d 519, 529 (2019) (Because Haynes's EEOC charge "contained no claims or factual allegations that could reasonably be expected upon investigation to lead to" evidence supporting claims of race or age discrimination, he failed to exhaust his ADEA and Title VII claims); *Hamilton v. Geithner*, 666 F.3d 1344, 1350, 399 U.S. App. D.C. 77 (D.C. Cir. 2012) (Plaintiff failed to exhaust administrative remedies where his "formal EEO complaint ma[de] no mention" of the challenged action); *Degefu v. VA*, Civil Action No. 20-cv-3548 (BAH), 2023 U.S. Dist. LEXIS 55510, at *20 (D.D.C. Mar. 30, 2023) (At the same time, "[t]he primary purpose of the exhaustion requirement is to provide the EEOC and defendants with sufficient notice to begin the investigative process," quoting *Brokenborough v. District of Columbia*, 236 F. Supp. 3d 41, 50 (D.D.C. 2017), and the requirement "should not be construed to place a heavy technical burden on individuals untrained in negotiating procedural labyrinths," *Id.* (quoting *Park v. Howard Univ.*, 71 F.3d 904, 907, 315 U.S. App. D.C. 196 (D.C. Cir. 1995)).  Accordingly, Defendant's argument that Mr. Bassett failed to exhaust his administrative remedies fails.

**II. The Agency's Delay in Providing Mr. Bassett with His Performance Evaluation (In a Manner He could Read), Adversely Impacted His Potential for Career Growth and Is Therefore an Adverse Action.**

In order to demonstrate a claim under the Rehabilitation Act, the plaintiff must prove two elements: (1) the plaintiff suffered an adverse employment action (2) because of the plaintiff's disability." *Baloch v. Kempthorne*, 550 F.3d 1191, 1196 (D.C. Cir. 2008).[2]

To demonstrate a claim for retaliation under the Rehabilitation Act, which mirrors the legal standard under the ADA, a plaintiff must satisfy three elements: he must show (1) that "he 'engaged in protected activity;'" (2) that "he 'was subjected to adverse action by' the defendant;" and (3) that there was "a causal connection 'between the adverse action and the protected activity.'" *Alston v. District of Columbia*, 561 F. Supp. 2d 29, 40 (D.D.C. 2008) (quoting *Mayers v. Laborers' Health & Safety Fund of N. Am.*, 478 F.3d 364, 369, 375 U.S. App. D.C. 134 (D.C. Cir. 2007)) (noting that "[t]he same test applies under the Rehabilitation Act" and the ADA (citation omitted)).

As Defendant stated in its motion, adverse actions for purposes of the Rehabilitation Act retaliation are analyzed under the same framework as Title VII claims. Def. Mot. Dismiss, Pg. No. 11. In *Ortiz-Diaz v. U.S. Dep't of Hous. & Urb. Dev.*, 867 F.3d 70, 74, 432 U.S. App. D.C. 82 (D.C. Cir. 2017), the D.C. Circuit made clear that employment actions may give rise to Title VII liability where those actions "adverse[ly] impact . . . the employee's potential for career advancement."

Regarding the Agency's delay in providing Mr. Bassett's performance evaluation, the complaint contains sufficient allegations that the Court may draw the reasonable inference that the opportunity to present a thorough and detailed response to Mr. Bassett's performance evaluation could have resulted in a change in his rating which in turn would have resulted in a

---

[2] "The Court is mindful that "[c]laims and defenses under [the Rehabilitation Act and the ADA] are virtually identical[,]" *Harrison v. Rubin*, 174 F.3d 249, 253, 335 U.S. App. D.C. 413 (D.C. Cir. 1999), and "cases interpreting either are applicable and interchangeable[,]" *Am. Council of the Blind v. Paulson,* 525 F.3d 1256, 1260 n.2, 381 U.S. App. D.C. 162 (D.C. Cir. 2008) (internal quotation marks omitted).

yearly bonus or annual leave award. Moreover, the minimally satisfactory rating inhibited Mr. Bassett's ability to secure a position elsewhere, at a higher grade, away from management's discriminatory practices. Second Amend. Compl. ¶ 44. Surely, Ms. Coleman's deliberate delay in providing Mr. Bassett with his performance evaluation and her (and Ms. Torres') hostile attitude towards allowing him additional time to review the performance evaluation and provide a thorough response affected the terms and conditions of his employment.

### III. The Agency Had No Justification for Failing to Provide and/or Delay in Providing Mr. Bassett with a Reasonable Accommodation.

The Agency hired Mr. Bassett under a Schedule A appointment in or around May 1994. Second Am. Compl. ¶ 8. As a Schedule A appointee, Mr. Bassett received an accommodation at the time of his appointment[3]. Pl. Ex. 1, Investigative Summary from the ROI. In 2013, Mr. Bassett asked for assistive technology that would allow him to enlarge the type so he can read text on paper and electronic devices as a reasonable accommodation. Id. Eventually the Agency accommodated Mr. Bassett by providing ZoomText. Second Amend. Compl. ¶ 45. Mr. Bassett made repeated requests for the assistive technology especially after his computer crashed and he could no longer use the assistive technology. Id. Thus, when the Agency gave Mr. Bassett his 2018/2019 performance appraisal on paper, it did so without providing him with the accommodation he needed. Moreover, rather than acknowledge its own violation, Ms. Torres, Mr. Bassett's second line supervisor and reviewing official, insisted that the clock for Mr. Bassett's time to respond to the performance evaluation started when Ms. Coleman gave him the evaluation, even though he could not read it. Second Amend. Compl. ¶ 37. The failure to accommodate arose when Ms. Coleman did not provide Mr. Bassett with the accommodation to

---

[3] The Investigative Summary is an excerpt from the Investigative Report/Report of Investigation which was furnished to the Agency on September 16, 2020.

read and evaluate his performance evaluation. Id. Whether Mr. Bassett asked for additional time to respond to the evaluation is irrelevant as to whether Ms. Coleman provided the proscribed accommodation in the first place, which she did not. Ms. Torres' unyielding enforcement and insistence of the response time was, simply put, a way to harass Mr. Bassett. Therefore, Defendant's argument that Mr. Bassett did not request additional time to respond to his performance evaluation as part of a reasonable accommodation rings hollow and was made to obfuscate the facts.

Defendant relies on *Mohegan v. Napolitano*, 613 F.3d 1162, 1168 (D.C. Cir. 2010) to support its argument that a delay in providing an accommodation does not amount to a refusal to accommodate. However, the *Mohegan* case is distinguishable from the matter at hand because in *Mohegan*, the Agency engaged in the interactive process to establish a reasonable accommodation. In the matter at hand, a reasonable accommodation was already in place. There was no need for the interactive process. Management knew that accommodation was needed but failed to supply it. Defendant also relies on *Weatherspoon v. Azar*, 380 F. Supp. 3d 65, 72 (D.D.C. 2019). Again, this is distinguishable as the parties were engaged in the interactive process and attempting to ascertain the accommodation needed. In *Weatherspoon* the court determined that a delay in providing an accommodation was not a failure to accommodate per se: "Given the short length of the delay, the Department's repeated efforts to accommodate her needs, and the reasons for the delay, the Court finds that the delay was reasonable as a matter of law." *Weatherspoon v. Azar*, 380 F. Supp. 3d 65, 73 (D.D.C. 2019). However, the court also stated that "An employer is not liable for denying an accommodation request if it participated "in good faith" in an "interactive process" aimed to satisfy the request. *Id* at 73. In the case at hand, as stated earlier, the interactive process was complete, and management knew of the needed

accommodation. Thus, a reasonable jury could conclude that Ms. Coleman and Ms. Torres did not act in good faith when they did not accommodate Mr. Bassett when they had no justification for the denial or for a delay in providing the accommodation. Moreover, a reasonable jury could also conclude that neither Ms. Coleman nor Ms. Torres were acting in good faith when they insisted that Mr. Bassett's five-day response time started when Ms. Coleman gave him the paper copy of his performance evaluation; a format which was not consistent with his accommodation.

The remaining cases Defendant relies upon are also not on point. In *Aka v. Wash. Hops. Ctr.,* 156 F.3d 1284, 1305 (D.C. Cir 1998)[4], the court ruled that an employer is not required to provide an employee with the accommodation he requests or prefers. Again, in the case at hand, an accommodation was already in place and management simply failed to provide it and had no justifiable reason to do so. And while Defendant cites cases which allow for a delay in providing an accommodation, courts have held that there must be justifiable reasons for the delay.

## CONCLUSION

For the above stated reasons, Defendant's Partial Motion to Dismiss should be denied. Mr. Bassett has alleged sufficient facts to sustain his claims. Mr. Bassett has clearly pled that he suffered sufficient conduct that could establish the plausibility of the Agency's discrimination and retaliatory actions.

Respectfully submitted this 29th day of June, 2023.

**LOPEZ AND WU, PLLC**

/s/ Kenneth C. Wu
Kenneth C. Wu
D.C. Bar No. 490601
1818 Library Street, Suite 500
Reston, Virginia 20190

---

[4] *Aka* was decided pursuant to a Rule 56 motion where the standard is significantly different from a 12(b)(6) motion.

Telephone: 703-835-6145  
Facsimile: 703-831-0181  
Email: kwu@lopezandwu.com  
*Attorney for Plaintiff*

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| CONRAD BASSETT,<br><br>Plaintiff,<br><br>v.<br><br>JULIE SU, ACTING SECRETARY<br>U.S. DEPARTMENT OF LABOR,<br><br>Defendant. | Civil Action No. 1:22-cv-2408-JEB |

**CERTIFICATE OF SERVICE**

I hereby certify that a true and correct copy of the foregoing document entitled **OPPOSITION TO DEFENDANT'S MOTION FOR PARTIAL DISMISSAL** was served electronically via the Court's ECF system to:

ERIKA OBLEA, DC BAR #1034393
Assistant United States Attorney
601 D Street, NW
Washington, DC 20530
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
erika.oblea@usdoj.gov

This 29th day of June 2023.

/s/ Kenneth C. Wu
Kenneth C. Wu

14