UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| CONRAD BASSETT,<br><br>    Plaintiff,<br><br>    v.<br><br>MARTIN J. WALSH, Secretary of the U.S. Department of Labor,<br><br>    Defendant. | Civil Action No. 22-2408 (JEB) |

**MEMORANDUM OPINION**

    Plaintiff Conrad Bassett is an employee at the Department of Labor. In this suit against Labor Secretary Martin J. Walsh, he alleges that the Department violated the Rehabilitation Act by refusing him reasonable accommodations, discriminating against him based on his disability, and retaliating against him. Defendant now moves to partially dismiss, contending that many of Plaintiff's claims are unexhausted, unavailable under the Rehabilitation Act, or unsubstantiated. The Court agrees that none of the challenged claims may proceed and will accordingly grant the Motion.

**I.    Background**

    The Court at this stage sets forth the facts as pled in the Complaint, assuming them to be true. See Sparrow v. United Air Lines, Inc., 216 F.3d 1111, 1113 (D.C. Cir. 2000). Bassett has worked at the Department since 1994 and now works as a Government Information Specialist in the Wage and Hour Division. See ECF No. 16 (Second Am. Compl.), ¶¶ 8–9. "At all times relevant to the Complaint," Genise Coleman and Patrice Rachel Torres were his first-line and second-line supervisors, respectively. Id., ¶¶ 10–11. Bassett suffers from congenital cataracts

1

and glaucoma, which affect "his daily life activities like seeing, working, reading and driving." Id., ¶ 16.  The Department is aware of Plaintiff's disability and granted him a reasonable accommodation in 2014; it also approved him for a computer program called ZoomText in 2019. Id., ¶¶ 45, 47 n.3.

The events that eventually led to this suit began on August 28, 2019, when Bassett requested and was denied leave to take a month off from October 1 to November 1, 2019.  Id., ¶¶ 24–27.  In a subsequent discussion regarding his leave request that took place on September 19, Coleman told him that she could "only approve his leave if he changed it to a leave request pursuant to the Family [and] Medical Leave Act (FMLA)."  Id., ¶ 28. Then, on October 2, Coleman again denied Plaintiff's leave request as not submitted pursuant to the FMLA.  Id., ¶ 29.

Later, on October 11, Bassett and Coleman met to discuss his 2018/2019 Performance Evaluation.  At this time, Plaintiff was unable to respond to his evaluation because it was delivered "in a format he could not read due to his disability."  Id., ¶ 33.  He accordingly requested his evaluation, as well as the materials Coleman relied on, in a legible format.  Id., ¶ 34.  Five days later, Coleman provided him "the entire record" in such a format.  Id., ¶ 38. Unhappy about this delay and believing that his initial evaluation was inaccurate, Plaintiff through his counsel requested additional time to review the materials he had been given and to respond to his performance evaluation.  Id., ¶ 39.  After some disputes about when this review period began, Torres provided a new deadline of October 22.  Id.  In addition, despite Plaintiff's response, Coleman did not revise the "Minimally Satisfactory" rating she had initially given him. Id., ¶¶ 43-44.

What turned out to be the last nail in the coffin occurred on October 18, when Bassett was supplied with ZoomText, which the Court assumes makes it easier to read and work on a computer screen. He alleges that he informed his supervisors that the computer he was using at the time could not support this program. Id., ¶ 45, 52. This, along with other issues Plaintiff had with using Adobe and accessing a department database, made it difficult for him to meet assigned deadlines. See ECF No. 19 (Pl. Opp. to MTD) at 5. Bassett alleges that the Department nevertheless continued to give him deadlines that were "completely unattainable" and assigned him to "more complex" work. Id. "To this day," Plaintiff states, his accommodations request "has not been met." Second Am. Compl., ¶ 55.

Having failed to secure his desired relief, Bassett filed a formal Equal Employment Opportunity complaint against the agency on December 28, 2019. See ECF No. 17 (Def. MTD), Exh. 1 (Formal EEO Compl.) at 3. This complaint alleged discrimination and retaliation based on the denial of his leave request, the denial of his reasonable-accommodation requests, the format in which he was given his 2018/2019 performance evaluation, the time he was given to respond to this evaluation, and the rating he received. Id. at 3-5. On April 29, 2020, the Department issued a letter notifying Plaintiff that it was accepting some, but not all, of his claims for investigation. See Def. MTD, Exh. 3 (April 29, 2020, Letter) at 2. Bassett objected to the Department's decision to reject some of his claims, and the agency responded by reformulating the claims it would accept for investigation. See Def. MTD, Exhs. 4, 5 (May 14, 2020, Letter; November 13, 2020, Letter). The Department accepted Plaintiff's claims of discrimination, retaliation, and hostile work environment based on the events described above. See November 13, 2020, Letter at 2-3. Ultimately, however, it denied relief for all claims in a Final Agency Decision issued on May 16, 2022. See Def. MTD, Exh. 6 (Final Agency Decision) at 17.

Dissatisfied with this result, Plaintiff brought this action on August 14, 2022. His initial Complaint contained two counts of discrimination and retaliation under the Rehabilitation Act and one count of hostile work environment based on disability, for which he mistakenly invoked Title VII. See ECF No. 1 (Compl.), ¶¶ 44–67. Shortly thereafter, he filed an Amended Complaint, which the Department moved to dismiss. See ECF No. 4 (Am. Compl.); No. 12 (Initial Def. MTD). Plaintiff then obtained leave to amend his Complaint for the second time. See ECF No. 15 (Minute Order dated April 28, 2023). In the Second Amended Complaint, which is the operative pleading here, Bassett again brings two counts of discrimination and retaliation under the Rehabilitation Act but now drops his Title VII cause of action. See Second Am. Compl., ¶¶ 56–71. Defendant now moves to dismiss in part under Federal Rule of Civil Procedure 12(b)(6).

## II. Legal Standard

Rule 12(b)(6) provides for the dismissal of an action where a complaint fails to "state a claim upon which relief can be granted." Although "detailed factual allegations" are not necessary to withstand a Rule 12(b)(6) motion, Bell Atl. Corp. v. Twombly, 550 U.S. 544, 555 (2007), "a complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (internal quotations marks and citation omitted). In weighing a motion to dismiss, a court "may consider only the facts alleged in the complaint, any documents either attached to or incorporated in the complaint[,] and matters of which [the court] may take judicial notice." EEOC v. St. Francis Xavier Parochial School, 117 F.3d 621, 624 (D.C. Cir. 1997). The court "must treat the complaint's factual allegations as true and must grant [the] plaintiff 'the benefit of all inferences that can be derived from the facts alleged.'" Sparrow v. United Air Lines, Inc., 216 F.3d 1111,

4

1113 (D.C. Cir. 2000) (quoting Schuler v. United States, 617 F.2d 605, 608 (D.C. Cir. 1979)) (internal citations omitted). It need not accept as true, however, "a legal conclusion couched as a factual allegation" or an inference unsupported by the facts set forth in the complaint. Trudeau v. FTC, 456 F.3d 178, 193 (D.C. Cir. 2006) (quoting Papasan v. Allain, 478 U.S. 265, 286 (1986)).

Rule 12(b)(1), conversely, permits dismissal of a complaint for lack of subject-matter jurisdiction. In general, courts must first address jurisdictional arguments before turning to the merits. See Sinochem Int'l Co. v. Malaysia Int'l Shipping Co., 549 U.S. 422, 430–31 (2007). A plaintiff bears the burden of proving that a court has subject-matter jurisdiction to hear her claims. See Lujan v. Defs. of Wildlife, 504 U.S. 555, 561 (1992); U.S. Ecology, Inc. v. U.S. Dep't of Interior, 231 F.3d 20, 24 (D.C. Cir. 2000). A court has an "affirmative obligation to ensure that it is acting within the scope of its jurisdictional authority." Grand Lodge of the Fraternal Order of Police v. Ashcroft, 185 F. Supp. 2d 9, 13 (D.D.C. 2001). For this reason, "'the [p]laintiff's factual allegations in the complaint . . . will bear closer scrutiny in resolving a 12(b)(1) motion' than in resolving a 12(b)(6) motion for failure to state a claim." Id. at 13–14 (quoting 5A Charles A. Wright & Arthur R. Miller, Fed. Practice & Procedure § 1350 (2d ed. 1987)).

**III.   Analysis**

In seeking dismissal, Labor raises three arguments: 1) Plaintiff has not exhausted two of his Rehabilitation Act claims, 2) His failure-to-accommodate allegations cannot be fashioned as separate discrimination or retaliation claims, and 3) He has not adequately pled certain other causes of action. Bassett challenges some of these contentions and concedes others, as will be detailed below.

A quick clarification on what is not at issue here. Defendant does not seek dismissal of Plaintiff's discrimination and retaliation claims relating to his August 2019 denial of leave, the assignment of tight deadlines, and the rating he received in his 2018/2019 performance evaluation. Nor does Labor assail his failure-to-accommodate claims based on his varied troubles with technology and computer software.

With these preliminaries out of the way, the Court examines Defendant's assertions in turn.

### A. Exhaustion

Before filing suit under the Rehabilitation Act, an employee must first exhaust his administrative remedies. Huang v. Wheeler, 215 F. Supp. 3d 100, 107–08 (D.D.C. 2016). To do so, he must "initiate contact with" an EEO Counselor "within 45 days of the date of the matter alleged to be discriminatory." 29 C.F.R. § 1614.105(a)(1). The employee, moreover, must "exhaust the administrative process for each discrete act for which he seeks to bring a claim." Nguyen v. Mabus, 895 F. Supp. 2d 158, 171 (D.D.C. 2012) (citing Nat'l R.R. Passenger Corp. v. Morgan, 536 U.S. 101, 113–14 (2002)). In determining whether a plaintiff has successfully exhausted his claims, courts will often look to the agency's Notice of Acceptance. See Bozgoz v. James, No. 19-239, 2020 WL 4732085, at *7 (D.D.C. 2020). Where an agency "reasonably fails to identify" a claim for investigation and the plaintiff does not object to this refusal to investigate, "the plaintiff cannot show that he has exhausted administrative remedies as to this claim." Dick v. Holder, 80 F. Supp. 3d 103, 114–15 (D.D.C. 2015); McKeithan v. Boarman, 803 F. Supp. 2d 63, 68 (D.D.C. 2011) (concluding that plaintiff's failure to object to agency's decision to reject claim "supports a finding that a plaintiff has failed to exhaust his administrative remedies with respect to" said claim) (internal quotation mark omitted).

Labor maintains that Bassett has not met these requirements for any claims that relate to his 2019/2020 performance evaluation or the assignment of complex work. See Def. MTD at 7; ECF No. 20 (Reply) at 5. Plaintiff, for his part, retorts only that he has exhausted his claims related to the latter. See Pl. Opp. at 6–8. As neither his Complaint nor his Opposition addresses the former, that issue has thus been conceded. Wannall v. Honeywell, Inc., 775 F.3d 425, 428 (D.C. Cir. 2014) ("[I]f a party files an opposition to a motion and therein addresses only some of the movant's arguments, the court may treat the unaddressed arguments as conceded.").

Moving to the exhaustion argument that he did address, Plaintiff does not dispute that his formal EEO complaint and subsequent amendments never explicitly allege that he was assigned more complex work than his co-workers. See Formal EEO Compl. at 4–5; Pl. Opp. at 6. And Bassett similarly does not dispute that the Department never accepted any claims for investigation relating to the assignment of complex work, or that he never objected to this refusal to investigate. See Nov. 13, 2020, Letter at 1-2. Plaintiff nonetheless posits that his complex-work allegations have been exhausted because they are "reasonably related" to the assignment-of-deadlines allegations that the agency did accept for investigation. See Pl. Opp. at 8 (citing Haynes v. D.C. Water & Sewer Auth., 924 F.3d 519 (D.C. Cir. 2019)).

To begin, it is unclear whether the "reasonably related" exhaustion exception even remains good law. See Webster v. Del Toro, 49 F.4th 562, 568 (D.C. Cir. 2022) (reserving question whether this doctrine survives Supreme Court's decision in Morgan, 536 U.S. at 113-14). Indeed, "most courts in this district have interpreted Morgan to require exhaustion for all discrete acts of [discrimination and] retaliation . . . regardless of any relationship that exists between those discrete claims and any others." Hicklin v. McDonald, 110 F. Supp. 3d 16, 19 (D.D.C. 2015) (internal quotation marks omitted).

7

Bassett, in any event, cannot succeed even under this relatedness standard. For an unexhausted claim to be sufficiently related to an exhausted claim, it must "[a]t a minimum . . . arise from the administrative investigation that can reasonably be expected to follow the charge of discrimination." Payne v. Salazar, 619 F.3d 56, 65 (D.C. Cir. 2010) (quoting Park v. Howard Univ., 71 F.3d 904, 907 (D.C. Cir. 1995)). Plaintiff never hinted at this kind of connection during the administrative process. In his amendments to his formal EEO complaint — which, again, make no mention of complex work — he complained that the deadlines assigned to him were unreasonable because the Department "failed to provide [Bassett] with a working computer." Def. MTD, Exh. 2 (Email Amending EEO Compl.); id. ("Mr. Bassett's supervisor . . . continues to give Mr. Bassett deadlines while he is using a broken computer."). Yet Bassett never discussed there what, if anything, this has to do with the assignment of more complex work. Nor would an investigator reasonably make such a connection. Plaintiff's last-minute attempt to link these disparate issues falls short of establishing that they "are factually similar such that they would be discovered during the agency's investigation," Mount v. Johnson, 36 F. Supp. 3d 74, 86 (D.D.C. 2014); the Court will, consequently, dismiss such claims for failure to exhaust.

B.  Sufficiency of Remaining Claims

Defendant next takes aim at two sets of Plaintiff's remaining claims. The first covers discrimination and retaliation causes of action based on Labor's alleged failure to accommodate his disability and its refusal to provide him sufficient time and means to review his 2018/2019 performance appraisal. The second comprises all his failure-to-accommodate claims save those based on his malfunctioning technology and computer software. The Court will address each separately.

*1. Discrimination and Retaliation*

Defendant first contends that certain claims must be dismissed because failure-to-accommodate allegations cannot be the basis for stand-alone discrimination or retaliation claims under the Rehabilitation Act. See Floyd v. Lee, 968 F. Supp. 2d 308, 334 (D.D.C. 2013) ("[I]f the denial of a request for accommodation could itself support a claim of retaliation based on the request, then every failure-to-accommodate claim would be doubled."). Plaintiff once again neglects to address this contention in his Opposition, so he has conceded the issue. See Pl. Opp. at 8–10; Wannall, 775 F.3d at 428.

Labor next asserts that, as to his allegations that it delayed in giving him his performance evaluation in an accessible format and did not provide him sufficient time to respond, Plaintiff has not alleged an adverse action. To establish unlawful discrimination under the Rehabilitation Act, a plaintiff must show that he has "suffered an adverse employment action solely because of [his] disability." Butler v. Wash. Metro. Area Transit Auth., 275 F. Supp. 3d 70, 81 (D.D.C. 2017). Following the D.C. Circuit's decision in Chambers v. District of Columbia, 35 F.4th 870 (D.C. Cir. 2022) (*en banc*), a plaintiff need show only that he was discriminated against with respect to the "terms, conditions, or privileges of employment" to meet this requirement. Id. at 874–75; cf. Bain v. Off. of Att'y Gen., No. 21-1751, 2022 WL 17904236, at *19 (D.D.C. Dec. 23, 2022) (applying Chambers to Rehabilitation Act). Despite expanding the range of conduct that can give rise to a discrimination action, the Chambers court was careful to stress that "not everything that happens at the workplace affects an employee's 'terms, conditions, or privileges of employment.'" 35 F.4th at 874.

A plaintiff must also allege an adverse action to make out a retaliation claim under the Act. See Walker v. Johnson, 798 F.3d 1085, 1091–92 (D.C. Cir. 2015). Such an adverse action

9

is "any harm that well might have dissuaded a reasonable worker from making or supporting a charge of discrimination." Baird v. Gotbaum, 662 F.3d 1246, 1249 (D.C. Cir. 2011) (internal quotation marks omitted). Not every action, however, will meet this threshold either; "petty slights, minor annoyances, and simple lack of good manners" will not suffice to show an adverse action. Burlington N. & Santa Fe Ry. Co. v. White, 548 U.S. 53, 68 (2006).

Plaintiff maintains that he has met his burden because his Complaint alleges that "the opportunity to present a thorough and detailed response to Mr. Bassett's performance evaluation could have resulted in a change in his rating which in turn would have resulted in a yearly bonus or annual leave award." Pl. Opp. at 9–10. Defendant retorts that this chain of reasoning is too speculative to show that its actions were adverse. See Reply at 6–7.

Labor has the better of the argument. Plaintiff is certainly correct that an action can be adverse if it has a negative impact on the employee's career advancement. See Ortiz-Diaz v. U.S. Dep't of Hous. & Urb. Dev., 867 F.3d 70, 74 (D.C. Cir. 2017). Yet Bassett acknowledges that the Department was delayed by only five additional days — only two of which were business days — in providing him his 2018/2019 appraisal in an accessible format. See Reply at 6; Def. MTD at 12. And Plaintiff admits that Labor did provide him an extension to review and respond to his performance appraisal. See Second Am. Compl., ¶¶ 39–42.

Bassett's argument is reduced to this: had the Department not waited a couple more days to provide him the proper means to review his 2018/2019 performance appraisal, and had it given Plaintiff more days than it did when it granted him an extension, he may have written a response convincing enough to change his rating. See Pl. Opp. at 9–10. This in turn may have resulted in employment benefits. Id. Even at this early stage, this line of reasoning is too speculative and fails to show that the Department's delay satisfies either adverse-action standard.

See Pauling v. D.C., 286 F. Supp. 3d 179, 203 (D.D.C. 2017) (to be adverse, an action must have "a discernible, as opposed to a speculative, effect") (internal citation omitted). The Court will accordingly grant the Motion as to these claims, too.

    2. *Failure to Accommodate*

Defendant's final challenge focuses on all of Plaintiff's failure-to-accommodate claims, except those based on its alleged refusal to address his computer-software and database-access issues. See Def. MTD at 14–17. To establish a failure-to-accommodate cause of action under the Rehabilitation Act, a plaintiff must show that "(1) she had a qualifying disability within the meaning of the statute, (2) her employer had notice of the disability, (3) with reasonable accommodation, she could perform the essential functions of the position, and (4) she requested an accommodation but the employer denied her request." Doak v. Johnson, 19 F. Supp. 3d 259, 273 (D.D.C. 2014), aff'd, 798 F.3d 1096 (D.C. Cir. 2015). Labor asserts that Bassett never alleges that he made a request for a reasonable accommodation of leave, additional time to respond to his performance appraisal, or reasonable deadlines. See Def. MTD at 14. And even if Plaintiff did make a request for additional time, Labor maintains, he has not alleged a failure to accommodate. Id. at 15–16. Labor makes the same point as to Plaintiff's claims based on the format in which he received his evaluation. Id.

Once again, Bassett addresses only some of these arguments. Specifically, he neglects to respond to Defendant's contention that he never made a reasonable-accommodation request related to leave or reasonable deadlines. See Pl. Opp. at 10–12. These points are thus conceded. See Wannall, 775 F.3d at 428.

Plaintiff does respond to Labor's other arguments. In doing so, however, he improperly attempts to supplement his Second Amended Complaint with an excerpt from an Investigative

11

Report that appears for the first time in his Opposition. See Pl. Opp. at 10; id., Exh. 1 (Investigative Report). Because "a complaint may not be amended by the briefs in opposition to a motion to dismiss," the Court will not consider this material. Arbitraje Casa de Cambio, S.A. de C.V. v. United States Postal Serv., 297 F. Supp. 2d 165, 170 (D.D.C. 2003).

Turning to what is properly before the Court, Plaintiff seems to argue that he did not need to make a request for more time to review his performance appraisal because the Department was already aware of his disability and the reasonable accommodation he was previously approved for. See Pl. Opp. at 11 ("Whether Mr. Bassett asked for additional time to respond to the evaluation is irrelevant . . . ."). The Department failed to accommodate him, Plaintiff maintains, the moment it provided him his 2018/2019 performance appraisal. Id. at 10–11. This argument comes up short. For one, Bassett all but admits that he did not request a reasonable accommodation of more time to review his appraisal. His only allegation is that his attorney requested an extension because of a disagreement with Torres over when the period for review began, not because he needed more time due to his disability. See Second Am. Compl., ¶¶ 37–39; Badwal v. Bd. of Trs. of Univ. of D.C., 139 F. Supp. 3d 295, 313 (D.D.C. 2015) (request for reasonable accommodation "must make clear that the employee wants assistance with his or her disability so that he or she may return, or continue, to work.") (internal quotation marks omitted). And, contrary to Plaintiff's assertions, "[n]otice of a disability does not ordinarily satisfy the . . . request requirement, which performs the independent function of informing an employer of the . . . accommodation needed to remedy" an employee's disability. Waggel v. George Washington Univ., 957 F.3d 1364, 1372 (D.C. Cir. 2020). This is so even if the Department previously approved Plaintiff for a different accommodation. Cf. Brackett v. Mayorkas, No. 17-988, 2021 WL 5711936, at *11 (D.D.C. Dec. 2, 2021). Because Plaintiff does not allege that his request for

12

an extension was related to his disability and because notice of his disability does not make up for the otherwise missing request for a reasonable accommodation, the Court agrees with Defendant and will dismiss this failure-to-accommodate claim.

The last remaining dispute concerns whether the Department reasonably accommodated Bassett's request for an accessible method to review his performance appraisal. Plaintiff believes that it did not, though his contention is based on the idea — just rejected by the Court — that notice of his disability suffices to show that he had made a request to receive the specific accommodation of an alternative format for reviewing his appraisal. See Pl. Opp. at 11. He indeed made a request for this accommodation, but not until he was provided his appraisal on October 11, 2019. See Second Am. Compl., ¶¶ 33–34. The Department did grant Plaintiff a reasonable accommodation, providing "some of the documents" three days later and "the entire record" two days after that. Id., ¶¶ 35, 38.

Plaintiff is left to argue that his request was not accommodated, not because he was not provided his evaluation in a legible format, but because the Department's delay in doing so was so lengthy as to be unreasonable. See Pl. Opp. at 10–12; Mogenhan v. Napolitano, 613 F.3d 1162, 1168 (D.C. Cir. 2010) ("[T]here are certainly circumstances in which a 'long-delayed accommodation could be considered' unreasonable.") (quoting Mayers v. Laborers' Health & Safety Fund of N. Am., 478 F.3d 364, 368 (D.C. Cir. 2007), abrogated on other grounds by Green v. Brennan, 578 U.S. 547 (2016)).

"In determining whether a delay is reasonable, the inquiry hinges on factors such as the length of the delay" and "the reasons for the delay." Weatherspoon v. Azar, 380 F. Supp. 3d 65, 71 (D.D.C. 2019) (quoting Selenke v. Med. Imaging of Colo., 248 F.3d 1249, 1262–63 (10th Cir. 2001)) (internal quotation marks omitted). As to the length, this five-day delay is far shorter than

other delays this Court has found reasonable in determining whether a reasonable-accommodation request has been denied.  See Weatherspoon, 380 F. Supp. 3d at 72–73 (holding that six-month delay was reasonable in part because of its "short length"); Matos v. DeVos, 317 F. Supp. 3d 489, 499 (D.D.C. 2018) (concluding that nearly two-year delay was reasonable).  The Department, moreover, had a good reason for this brief delay: Plaintiff made his request on a Friday and the following Monday was the Columbus Day holiday.  See Def. MTD at 12; Weatherspoon, 380 F. Supp. 3d at 72–73 (finding delay reasonable when it was partly caused by events "out of the [defendant's] control").  When taken together, these reasons convince the Court that the delay here was reasonable, so it will dismiss this failure-to-accommodate claim as well.

**IV.     Conclusion**

For the foregoing reasons, the Court will grant the Motion and dismiss all claims except 1) Plaintiff's discrete discrimination and retaliation claims relating to his August 2019 denial of leave, the assignment of deadlines, and the rating he received in his 2018/2019 performance evaluation, and 2) Plaintiff's failure-to-accommodate claims based on his varied troubles with technology and computer software.  A separate Order consistent with this Opinion will issue this day.

/s/ *James E. Boasberg*
JAMES E. BOASBERG
Chief Judge

Date:  August 4, 2023